IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

E.P., through his next friend Behavior Therapy
Service LLC, d/b/a Guardianship Services,

      Plaintiff,

v.                                   **Case No. CV-09-640 JEC/KBM**

NEW MEXICO DEPARTMENT OF HEALTH, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant Beth Schaefer's Motion to Dismiss the First Amended Complaint and for Qualified Immunity* (Doc. 7), filed July 8, 2009 ("Motion"). This action was removed pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446(b). Jurisdiction is based on 28 U.S.C. § 1331. The Court, having reviewed the briefing by both parties and being otherwise informed, GRANTS the Motion, as set forth below.

## I.   BACKGROUND

Plaintiff in this case has mental retardation, a seizure disorder and other disabilities. *1st Am. Complt.* (Doc. 1, Ex. A) at ¶ 2. Through his next friend, Behavior Therapy Service LLC d/b/a Guardianship Services, Plaintiff contends that in January 1982, Defendants illegally committed him in the Fort Stanton Hospital and Training School ("Fort Stanton") without due process of law. *See id.; Response to Def. Beth Schaefer's Motion to Dismiss* (Doc. 7) ("Resp.") at 3. Approximately nine months later, Defendants allegedly then wrongfully discharged him without court permission or appropriate treatment, planning, or monitoring of his placement. *See 1st Am. Complt.* at ¶ 2*; Resp.* at 3. Since 1992, Plaintiff has allegedly been referred numerous

times to Adult Protective Services "because he was being neglected, exploited, unable to obtain needed services and supports, and unnecessarily institutionalized." *1ˢᵗ Am. Complt.* at ¶ 3. Plaintiff's claims against Defendant Schaefer are for the negligent operation of a mental institution (Count I), negligent maintenance of a building (Count II), and violations of the First and Fourteenth Amendments of the United States Constitution (Count III).

According to Plaintiff's Complaint, Defendant Beth Schaefer was an attorney for the New Mexico Department of Health ("DOH") from the mid-1970s into the 1990s. *Id.* at ¶ 20. In 1980, Ms. Schaefer allegedly "advised administrators at the Training School that there were too many residents on 'aftercare' status, and [] recommended and directed that the Training School 'discharge' those Training School residents from 'aftercare.'" *Id.* Plaintiff contends that Ms. Schaefer "breached [her] duties to Plaintiff by improperly placing [him] in unsupervised outside facilities or with third parties which were extensions of the state-operated facilities," which lacked experience and skills to care for people with severe developmental disabilities, *id.* at ¶ 86, as well as "by failing to adhere to and follow applicable regulations, policies and procedures designed to assure the safety and well-being of individuals entrusted to the State's custody," *id.* at ¶ 96. In Count III, Plaintiff argues that Schaefer "departed from accepted professional judgment, practice, or standards so as to abdicate reliance on professional judgment in [her] decisions regarding placement, monitoring, supervision and protection of Plaintiff when he was in the outside placements." *Id.* at ¶ 105.

Defendant Schaefer's Motion argues first that Counts I and II should be dismissed pursuant to the two-year statute of limitations provided by the New Mexico Tort Claims Act, NMSA 1978, § 41-4-15(A). Secondly, Defendant Schaefer argues that Plaintiff's First Amended

Complaint fails to adequately plead factual allegations which are sufficient to render Count III plausible.  Even if Plaintiff's Complaint is sufficient, Defendant Schaefer argues she is entitled to qualified immunity for her alleged role in violating Plaintiff's civil rights.

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Dismissal is not appropriate if the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 1974, 167 L.Ed.2d 929 (2007).)  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Id.*

"It is well-established [] that in determining whether to grant a motion to dismiss, the district court [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."  *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).  Notwithstanding this rule, however, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002)).  Where matters outside the pleadings are considered, a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P. 12(d).

In response to Defendant's Motion to Dismiss, Plaintiff submitted portions of the Defendant Schaefer's July 29, 2009 deposition.  Because the Court has not considered the contents of Ms. Schaefer's deposition in deciding the motion to dismiss, it is not necessary to convert the motion to a motion for summary judgment.

## III.   DISCUSSION

### A.   Counts I and II Are Dismissed With Prejudice Pursuant to the Statute of Limitations at NMSA 1978, § 41-4-15(A).

Plaintiff contends in Count I that the Individual Defendants, including Schaefer, were negligent in the operation of state-operated facilities such as the Fort Stanton Hospital and Training School, where Plaintiff was allegedly placed and from which he was allegedly discharged to other placement with outside facilities, or extensions of the state-operated facilities.  *1st Am. Complt.* (Doc. 1, Ex. A) at 23-25.  In Count II, Plaintiff alleges that the Individual Defendants, including Schaefer, were negligent in the maintenance of state-operated facilities "by improperly placing him in outside facilities or with third parties which were extensions of the state-operated facilities."  *Id.* at ¶ 96.

Since July 1, 1976, the State's tort liability has been governed by the Tort Claims Act, NMSA 1978, § 41-4-1 to -29.  The Tort Claims Act ("TCA") provides that

> [a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file.  This subsection applies to all persons regardless of minority or other legal disability.

NMSA 1978, § 41-4-15(A).

The New Mexico Court of Appeals has upheld the constitutionally of the statute of

4

limitations, holding that the last sentence of the provision does not unlawfully discriminate against mentally handicapped plaintiffs on the basis of their mental incapacity. *Jaramillo v. State*, 111 N.M. 722, 725, 809 P.2d 636, 639 (Ct. App. 1991) ("the statutory scheme does not discriminate against [the plaintiff] based on his mental incapacity; instead, it provides a shorter time period of mentally incapacitated persons to sue governmental entities than would be available if the suit were against a private party. In short, the statutory scheme classifies claims based on the character of the defendant, not the mental incapacity of the plaintiff"). The Court in *Jaramillo* went on to find that the two-year statute of limitations in NMSA 1978, § 41-4-15(C) "is a reasonable period of time and thus does not violate plaintiff's rights to due process." *Id.* at 727, 809 P.2d at 641.

The Honorable Robert C. Brack of this District dismissed claims similar to Plaintiff's pursuant to the statute of limitations found at NMSA 1978, § 41-4-15(A). *J.M. v. New Mexico Dept. Of Health*, Case No. CIV 07-0604 RB/ACT, *Memorandum Opinion and Order* (Doc. 194), filed Dec. 31, 2008. After citing the two-year limitations period and the *Jaramillo* decision, Judge Brack went on to note that "implied or equitable exceptions are not to be grafted upon the statute of limitations where the legislature has not made the exception in express words in the statute." *Id.* at 6 (citing *Mosgrave v. McManus*, 24 N.M. 227, 173 P. 196, 197 (1918)).

Plaintiff asks the Court to disregard the statute of limitations and the Court of Appeals' decision in *Jaramillo* and decline to follow Judge Brack's analysis of the issue in *J.M.* because "the Court of Appeals' 1991 decision in *Jaramillo v. State* is difficult to square with the same court's recognition (scarcely two years later) that persons with developmental disabilities are 'perhaps our most fragile class of citizens.'" *Pl.'s Resp*. (Doc. 20) at 30 (quoting *LaBalbo v.*

*Hymes*, 115 N.M. 314, 317, 850 P.2d 1017, 1020 (Ct. App. 1993)).  Alternatively, Plaintiff asks

the Court to certify to the New Mexico Supreme Court the question whether the time bar can

constitutionally apply regardless of legal disability.  *Id.* at 29.  Finally, Plaintiff urges the Court

to find that the statute of limitations has been tolled by fraudulent concealment.  *Id.* at 31.

> **1.     New Mexico law is clear: the TCA's two-year statute of limitations
> applies, regardless of plaintiff's developmental disabilities.**

While Plaintiff correctly quotes the Court of Appeals in *LaBalbo*, nothing in that opinion

indicates any intention on the part of the Court of Appeals to overturn or otherwise call into

question its previous statute of limitations ruling in *Jaramillo v. State*.  The *LaBalbo* opinion

concerns the sufficiency of the plaintiff's § 1983 action, which seeks to prevent a group home

from discharging a developmentally disabled woman.  115 N.M. at 316-17, 850 P.2d 1017.

There is not a statute of limitations issue in *LaBalbo*.  Moreover, the Court of Appeals has

reiterated the holding in *Jaramillo v. State* since the *LaBalbo* decision.  *Jaramillo v. Heaton*,

2004-NMCA-123, ¶ 11, 136 N.M. 498, 100 P.3d 204 (noting *Jaramillo v. State*, "in which we

held that two years was a reasonable time in which to require a mentally incompetent victim to

file suit under the Tort Claims Act").  Accordingly, the Court finds no legal basis upon which to

question the validity of the TCA statute of limitation.

> **2.     Certification of the question whether § 41-4-15(A) remains valid is not
> appropriate under Rule 12-607 or otherwise necessary**.

New Mexico's Rules of Appellate Procedure empower the Supreme Court to respond to

certified questions only where "the question is one for which answer is not provided by a

controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of

Appeals; or (b) constitutional provision or statute of this state."  NMRA 12-607(A)(1) (2009).  In

this case, it appears that the question Plaintiff would certify has already been answered both by the Court of Appeals in *Jaramillo v. State* and by NMSA 1978, § 41-4-15(A). As such, certification may not be appropriate. Regardless, the answer is clear under existing New Mexico law, and certification of the proposed question is therefore unnecessary.

### 3.    The doctrine of fraudulent concealment is not applicable.

The fraudulent concealment alleged in this case consists of conduct by Defendants Vigil, Rogers, Padilla, Hart, Putnam, and the New Mexico Department of Health, the Los Lunas Center for Persons with Developmental Disabilities, the New Mexico Aging and Long Term Services Department, and the Developmental Disabilities Planning Council, collectively referred to as "the State Defendants," *1st Am. Complt.* at ¶ 33, "in placing and abandoning the Plaintiff outside judicial supervision," *id.* at ¶ 78. No allegations of acts amounting to fraudulent concealment are made against Defendant Schaefer.

Plaintiff recognizes that Judge Brack has previously rejected his argument in *J.M. v. New Mexico Dept. Of Health*, Case No. CIV 07-0604 RB/ACT, Docs. 194 and 226. Indeed, fraudulent concealment was pled almost identically in the present case as in *J.M. Compare id.* at Doc. 226, p. 2 *with 1st Am. Complt.* at ¶ 78. Noting that "[f]raudulent concealment must be plead with particularity," Judge Brack found that "Plaintiff JM failed to assert sufficient factual allegations to meet her burden or render her fraudulent concealment claim plausible." *J.M.* at Doc. 226, p. 5. Moreover, Judge Brack held that the essence of the plaintiff's fraudulent concealment claim was that JM lacked the capacity to initiate suit because of her mental disability rather than any specific act or omission by the defendants. *Id.* at 7. To accept Plaintiff's fraudulent concealment argument would, in Judge Brack's view, "allow Plaintiff JM

to perform an end run around the [TCA statute of limitation] by bootstrapping an equitable tolling exception, nominally identified as fraudulent concealment, based entirely on mental incapacity, a tolling exception which is unequivocally precluded by the Tort Claims Act." *Id.*

After reexamining this issue and the controlling law, the Court agrees entirely with Judge Brack's analysis and therefore finds that the doctrine of fraudulent concealment is not applicable and, further, that Plaintiff has failed to sufficiently plead facts to support such a claim.

**B.      Plaintiff's Allegations Against Defendant Schaefer in Count III Fail to State a Claim Upon Which Relief May Be Granted.**

In his third cause of action for violations of the First and Fourteenth Amendments, Plaintiff alleges violations of his substantive and procedural due process rights.  The contours of these claims are less than clear.

Factually, Plaintiff contends he "was taken into the custody of the state and placed by the Defendants into the Fort Stanton Hospital and Training School ("Fort Stanton") in January of 1982." *1st Am. Complt.* at ¶ 1.  Plaintiff claims he was "held there involuntarily" until September 1982, when "Defendants illegally placed Plaintiff into a setting without anyone's informed consent, then abdicated all responsibility for him." *Id.* at ¶ 2.  Thereafter, Plaintiff was allegedly the subject of numerous referrals to Adult Protective Services, homeless, and even incarcerated, allegedly as a result of the Defendants' failures to provide "minimally adequate discharge planning, monitoring, supervision, periodic judicial review, or the appointment of qualified limited guardians and conservators." *Id.* at ¶ 3.

There are no specific allegations in Count III as to Defendant Schaefer.  *Id.* at ¶¶ 100-113.  As part of Plaintiff's general allegations, however, he contends that "[u]pon information and belief, Defendants Delgado, Mateju, Adams, Schaefer and some John Does participated in

and directed the decision to place Plaintiff into [Fort Stanton] without due process of law." *Id.* at

¶ 36.  Plaintiff claims these same Defendants had an established practice of placing disabled

persons like Plaintiff in settings outside of the State Hospitals like Fort Stanton and then

abandoning them—all without arranging for a legal guardian or other surrogate decision-maker

to protect his interests and ensure his legal rights were protected "even though they knew

Plaintiff was incapable of making fully-informed decisions about his own care and welfare." *Id.*

at ¶¶ 42-44.

> ### 1.   The First Amended Complaint Lacks Sufficient Allegations as to How Defendant Schaefer Allegedly Violated Plaintiff's Civil Rights.

Individual liability for a violation of § 1983 "must be based on *personal involvement* in

the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)

(emphasis added).  In addition to "situations where a defendant violates a plaintiff's rights by

physically placing hands on him," individual defendants who are supervisors can be held liable

for a subordinate's constitutional deprivations "where an 'affirmative link' exists between the

constitutional deprivation and either the supervisor's personal participation, his exercise of

control or direction, or his failure to supervise." *Id.*

In § 1983 cases, it is therefore "particularly important ... that the complaint make clear

exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as

to the basis of the claims against him or her, as distinguished from collective allegations against

the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008).  Clarity in pleading

is also especially important in § 1983 cases considering the district court's responsibility to

resolve any qualified immunity defenses "at the earliest possible stage of a litigation." *Id.* at

1249 (quoting *Anderson v. Creighton*, 482 U.S. 635, 646 n.6, 107 S.Ct. 3034, 97 L.Ed.2d 523

(1987)).

In *Robbins*, the Tenth Circuit found the plaintiff's § 1983 claim should be dismissed for failure of fair notice because the plaintiffs "failed to isolate the allegedly unconstitutional acts of each defendant," failed to identify which defendants had direct contact with the plaintiffs, "and for those defendants who had no direct contact, how they might be individually liable for deprivations of [the plaintiff's] constitutional rights." *Id.* at 1249-50.

> Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

*Id.* at 1250.

Plaintiff in the present case similarly fail to allege specific facts as to Defendant Schaefer's role in the alleged deprivation of Plaintiff's rights.  There are no facts alleged as to direct contact between Defendant Schaefer and Plaintiff, either at the time Plaintiff was "placed" at Fort Stanton or upon his discharge.  As to Plaintiff's original placement, he claims, "[u]pon information and belief," that Schaefer, along with three other individual defendants who are named and an unknown number of John Does, "participated in and directed the decision to place Plaintiff into the Training School without due process of law." *1*ˢᵗ *Am. Complt.* at ¶ 36.  There are no allegations to indicate specific actions taken by Schaefer versus the other individuals.

What is clear from Plaintiff's Complaint is that Schaefer was employed as an attorney for DOH and the Training School, whereas the other named defendants were administrators or assistant administrators at "the Training School." *Id.* at ¶¶ 17-20.  In her role as an attorney,

Plaintiff contends Schaefer "exercised some administrative authority" and that she "had the duty and responsibility to ensure that DOH and the Training School protected the constitutional and statutory rights of the Plaintiff and other residents." *Id.* at ¶ 20.  Plaintiff also contends that Schaefer "oversaw the placement of Plaintiff and other residents in places where they were denied the minimally adequate medical care, humane living conditions and other treatment to which they were entitled." *Id.*

The Court does not believe Plaintiff's Complaint contains facts sufficient to "raise a right to relief above the speculative level," *Twombly*, 127 S.Ct. at 1965, or to "nudge [his] claims across the line from conceivable to plausible," *id.* at 1974.  Even assuming that Plaintiffs are correct that Defendant Schaefer had some administrative authority or responsibility toward Plaintiff in her position as an attorney for the DOH, there are no facts to suggest she abused that authority with respect to Plaintiff.  Although Plaintiff claims she advised others about individuals on "aftercare status," there are no facts alleged to suggest how such advice affected Plaintiff, who is not even alleged to have been on aftercare status.

The Court recognizes that in *JM v. New Mexico Dept. Of Health*, which involves allegations similar to those in the present case, Judge Brack denied a Motion to Dismiss by Defendant Schaefer, which is somewhat similar to the present Motion.  However, the allegations in that case included claims that Schaefer (1) "personally participated in a conspiracy to place JM and JE with unlicensed private third party businesses, knowing that they would be economically exploited and denied necessary medical care, humane living conditions and other required treatment," (2) "participated in economincally exploiting JM and JE by arranging to have their federal entitlement payments, including Supplemental Security Income and Medicare

11

payments, transferred to third parties without ensuring that the money was properly accounted

for and spent on behalf of the Plaintiffs," (3) "conspired with the other Defendants to deceive the

state court as to JM and JE's condition, welfare, and ability to care for themselves, and thereby,

deprived JM and JE of the care and protection they needed," and (4) "endangered JM and JE by

recklessly failing to provide them with the discharge services they required as developmentally

disabled individuals, including assigning guardians or surrogate decision-makers who could

protect their legal rights and arranging for JM and JE to receive necessary respite care."

*Memorandum Opinion and Order* (Doc. 224) at 3-4, Case No. 07-CIV-0604 RB/ACT.  In the

case at bar, by contrast, Plaintiff makes only vague allegations as to Schaefer's role in advising

the discharge of Training School residents who were on aftercare status.

To support a claim for violation of his substantive due process rights, Plaintiff must show

that Defendant Schaefer's actions "meet a very high degree of culpability."  *Green v. Post*, 574

F.3d 1294, 1302 (10th Cir. 2009).  Plaintiff must allege that Schaefer committed "the most

egregious official conduct," or something more than could be redressed by a simple tort claim.

*County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1988).  Plaintiff must demonstrate "a level of

executive abuse of power" that "shocks the conscience."  *Id.* at 846.  More than mere negligence,

intentional or reckless abuse of power is required—more even than the allegation that Schaefer

"knowingly permitt[ed] unreasonable risks to continue."  *Moore v. Guthrie*, 438 F.3d 1036, 1040

(10th Cir. 2006) (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002), *Tonkovich v.*

*Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998), and *DeAnzona v. City and County of*

*Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000)).  In *Green v. Post*, the Tenth Circuit noted that in

cases where government officials like Defendant Schaefer have "the opportunity for 'reflection

and unhurried judgments,'" as in this case, plaintiffs must "show[] that [the defendants] were subjectively aware of a substantial risk of serious harm to the plaintiff" in order to establish a potential for liability. *Id.* (quoting *Hunt v. Sycamore Comm. Sch. Dist.*, 542 F.3d 529, 540 (6th Cir. 2008)). In light of these requirements as well as those of *Twombly*, more is required to connect Defendant Schaefer to the alleged deprivation of Plaintiff's constitutional rights.

> **2.     Plaintiff Does Not Allege Facts to Support Constitutional Rights of Safe Conditions of Confinement or Habilitation, and Procedural Due Process Claim is Therefore Not Plausible.**

Two elements are required to prevail on a claim for violation of the right to procedural due process: (1) possession of a constitutionally protected liberty or property interest such that the due process protections are applicable, and (2) lack of the appropriate level of process. *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1256 (10th Cir. 2008).

Although Plaintiff alleges he was denied due process of law when he was placed at Fort Stanton, *1st Am. Complt.* at ¶ 36, he does not seek to redress this injury in his First Amended Complaint. His claim that his procedural due process rights were violated arises not from the initial placement at Fort Stanton but, rather, from his discharge. Regardless whether Plaintiff was legally placed at Fort Stanton, Plaintiff argues he acquired a protected liberty interest in safe conditions of confinement there as well as a protected property interest in the benefits of treatment and habilitation. *Resp.* at 10. Plaintiff contends that "once the benefits of education, training, and habilitation have been extended by state or federal law, the state cannot whisk them away without affording the beneficiaries at least the rudiments of due process." *Id.* at 11. Upon release from Fort Stanton without notice and an opportunity to be heard, the violation of Plaintiff's procedural due process rights was purportedly complete. *Id.* at 10.

Defendant Schaefer correctly points out that there is no constitutional right to be committed to or to remain in state custody.  *O'Connor v. Donaldson*, 422 U.S. 563, 574-575 (1975).  "[E]ven if [Plaintiff's] involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed."  *Id.* at 575.

For his position that he obtained liberty and property interests in the conditions of an illegal confinement, Plaintiff relies on *LaBalbo v. Hymes*, a 1993 decision wherein the New Mexico Court of Appeals "assume[d] without deciding" that a developmentally disabled resident of a group home had "a protected interest in receiving state-funded habilitation services."  115 N.M. 314, 319, n.2, 850 P.2d 1017, 1022, n.2 (Ct. App. 1993).

The protected interest assumed in *LaBalbo* arose not from federal law or the United States Constitution but rather from the New Mexico Developmental Disabilities Community Services Act, NMSA 1978, §§ 28-16-1 to 28-16-12 and the Mental Health and Developmental Disabilities Code, NMSA 1978, §§ 43-1-1 to 43-1-25.  *Id.*  Because the Developmental Disabilities Community Services Act was not enacted until 1984—two years after Plaintiff's discharge from Fort Stanton, its provisions are not relevant to the analysis.  NMSA 1978, §§ 28-16-1 through -13 (1987 Repl. Pamp.)

The Mental Health and Developmental Disabilities Code ("the Code"), was enacted in 1977 and, as of 1982, provided that "[e]ach resident client receiving developmental disabilities services shall have the right to prompt habilitation services pursuant to an individualized habilitation plan and consistent with the least drastic means principle."  NMSA 1978, § 43-1-8 (Repl. Pamp. 1979 & Supp. 1982).  Individualized habilitation plans are to include "criteria for release to less restrictive settings for treatment or habilitation and criteria for discharge and a

projected date for discharge."  NMSA 1978, § 43-1-9(C)(6) (Repl. Pamp. 1979 & Supp. 1982).

Nothing in the Code provides for the continuing right to habilitation services upon discharge from a residential facility like Fort Stanton.  To the contrary, with respect to developmentally disabled adults who are involuntarily committed, the Code provides that "[n]o developmental disabilities treatment or habilitation facility is required to detain, treat or provide services to a client when the client does not appear to require such detention, treatment or habilitation." NMSA 1978, § 43-1-13(I) (Repl. Pamp. 1979 & Supp. 1982).  As to clients who are voluntarily admitted, the Code provides they "shall have the right to immediate discharge from the residential facility upon request."  NMSA 1978, 43-1-14(C) (Repl. Pamp. 1979 & Supp. 1982).

There are no facts alleged as to whether Plaintiff was voluntarily or involuntarily committed to Fort Stanton.  As Defendant Schaefer notes in her Memorandum in support of the instant Motion, Plaintiff's First Amended Complaint "[n]ever reveal[s] how or when E.P. came to be at Fort Stanton [], nor how he came to be discharged therefrom." *Memorandum* (Doc. 8) at 5.

The procedures in place in 1982 for involuntary commitment of a developmentally disabled adult require appointment of a guardian, and the filing of a petition in court, with a hearing where the disabled adult "shall be represented by counsel."  NMSA 1978, § 43-1-13 (1979 & Repl. Supp. 1982).  "The court shall order residential placement of the proposed client *if it is established by clear and convincing evidence* that the proposed client has a developmental disability which creates an imminent likelihood of serious harm to himself or others or the person is so greatly disabled that residential services would be in his best interest and that such

residential placement is, in his case, the least drastic means."  NMSA 1978, § 43-1-13(E) (1979
& Repl. Supp. 1982) (emphasis added).  In six months, any commitment order expires on its own
terms, and "the client may be detained only after a new commitment hearing, unless waived after
consultation with the client's attorney."  *Id.*

      If Plaintiff voluntarily presented himself for admission at Fort Stanton, he was entitled by
law in 1982 to "the right of immediate discharge from the facility upon request."  NMSA 1978, §
43-1-14(B) (1979 & Repl. Supp. 1982).

      Plaintiff contends he was not competent at the time of his 1982 discharge from Fort
Stanton.  *1st Am. Complt.* at ¶¶ 2 ("no competent adult consented to his placement outside Fort
Stanton"), 36 ("[h]e was unable to act on his own behalf, either by himself, due to his incapacity,
or through a legally-appointed guardian" and characterizing Plaintiff as "decisionally
incapacitated and [in] need[] [of] a guardian"), 37 ("[t]he State Defendants knew that Plaintiff
was unable to care for himself, to make important decisions for himself, or to protect his own
rights and interests, and knowingly took advantage of his incapacity").  However, these
conclusory allegations do not enable the Court to conclude that Plaintiff was not entitled to the
right of "immediate discharge ... upon request" from Fort Stanton.  Even assuming (in the
absence of the allegation) that Plaintiff was involuntarily committed, the First Amended
Complaint simply lacks sufficient allegations to show that Plaintiff appeared to require further
detention, treatment or habilitation at the time of his 1982 discharge from Fort Stanton.  The only
fact Plaintiff alleges with regard to his capacity at the time of discharge, was his prior nine-
month period of residence at Fort Stanton.  However, the Code specifically cautions that
"[n]either the fact that a person has been accepted at or admitted to a hospital or institutional

16

facility, nor the receiving of mental health or developmental disability treatment services, shall constitute a sufficient basis for a finding of incompetence or the denial of any right or benefit of whatever nature which he would have otherwise." NMSA 1978, § 43-1-5 (Repl. Pamp. 1979 & Supp. 1982).

Certainly, "some plaintiff could prove some set of facts in support of the pleaded claim[]" for procedural due process. *Ridge at Red Hawk*, 493 F.3d at 1177. But *this Plaintiff* has not "nudged [his] claim across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. The First Amended Complaint lacks allegations from which the Court could conclude that Plaintiff had a continuing right to habilitation services upon discharge from Fort Stanton. Plaintiff therefore fails to state a cognizable claim for deprivation of his right to procedural due process arising from his 1982 discharge.

### 3. Plaintiff Does Not Plead Facts Sufficient to Render His Claim of a Special Relationship with Defendants, or Defendants' Danger Creation.

Recognizing that the Due Process Clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security," the Supreme Court has held that it confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U.S. 189, 195-96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Even so, the Supreme Court acknowledges that the Constitution will impose a duty upon state actors to assume responsibility for an individual's safety and well being where it has taken

that person into its custody, effectively rendering him unable to care for himself. *Id.* at 200.
Classic examples of the state's duties in this regard arise out of the "special relationship" that
exists between the state and prisoners, individuals committed against their will to mental
institutions, and children in state-run foster care. *DeAnzona v. City and County of Denver*, 222
F.3d 1229, 1234 (10th Cir. 2000).

Alternatively, Plaintiff may demonstrate duties owed to him by state actors, including
Defendant Schaefer, based on the their creation of some danger.  To prove a substantive due
process violation based on danger creation, Plaintiff must prove that (1) he was a member of a
limited and specifically definable group; (2) defendant's conduct put him at substantial risk of
serious, immediate, and proximate harm; (3) the risk was obvious or known; (4) defendant acted
recklessly in conscious disregard of that risk; (5) such conduct, when viewed in total is
conscience-shocking, and (6) defendant created the danger or increased his vulnerability to the
danger in some way. *Id.*, 222 F.3d at 1235.

Here, Plaintiff claims a special relationship by virtue of the fact that he was in state
custody for nine months in 1982.  Plaintiff also makes a number of conclusory allegations that
Defendant Schaefer knew or should have known that he was unable to care for himself. *See,
e.g., 1st Am. Complt.* at ¶¶ 2 ("no competent adult consented to his placement outside Fort
Stanton"), 36 ("[h]e was unable to act on his own behalf, either by himself, due to his incapacity,
or through a legally-appointed guardian" and characterizing Plaintiff as "decisionally
incapacitated and [in] need[] [of] a guardian"), 37 ("[t]he State Defendants knew that Plaintiff
was unable to care for himself, to make important decisions for himself, or to protect his own
rights and interests, and knowingly took advantage of his incapacity").  However, as discussed in

18

depth above as part of the discussion of Plaintiff's procedural due process claim, there are not sufficient allegations in Plaintiff's First Amended Complaint to show that Plaintiff was committed to Fort Stanton against his will.  Absent an involuntary commitment, no special relationship arises.

Plaintiff's "danger creation" argument fails for the same reasons.  The First Amended Complaint simply lacks factual allegations from which the Court may conclude that Plaintiff was a member of a limited group, that discharge put Plaintiff at substantial risk of serious, immediate, or proximate harm, that the risk of such harm was obvious, that Defendant Schaefer's conduct was reckless to the degree of shocking the Court's conscience, or that Defendant Schaefer's role in the discharge increased Plaintiff's vulnerability in any way.  *See DeAnzona*, 222 F.3d at 1235.

### C.    Even Assuming Violation of Plaintiff's Due Process Rights, Defendant Schaefer is Entitled to Qualified Immunity on Plaintiff's Claims As Pled.

When a defendant raises qualified immunity, the plaintiff must carry a two-part burden for his claims to survive.  *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1183 (10th Cir. 2009) (citing *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006)).  First, Plaintiff must show "that the defendant's actions violated a constitutional or statutory right" and, second, that "the right at issue was clearly established at the time of the defendant's unlawful conduct."  *Id.* (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001) (quotation omitted)).

As explained in detail above, Plaintiff's claims as presently stated lack plausibility in terms of whether Defendant Schaefer's alleged actions violated any constitutional or statutory right.  Thus, for the same reasons Plaintiff's claims for substantive and procedural due process violations are dismissed without prejudice, Defendant Schaefer is also entitled to dismissal without prejudice on qualified immunity.  Stated differently, Plaintiff's allegations fail to set

19

forth a plausible claim for violation of his "clearly established" constitutional rights.

## IV.  CONCLUSION

*Defendant Beth Schaefer's Motion to Dismiss the First Amended Complaint and for Qualified Immunity* (Doc. 7), filed July 8, 2009, is **GRANTED**.  Counts I and II of Plaintiff's First Amended Complaint purport to raise claims that are barred by the applicable statute of limitations and are therefore dismissed with prejudice.  In Count III, Plaintiff has failed to allege sufficient facts to support a plausible right to relief.  Count III is therefore dismissed without prejudice.

Dated November 16, 2009.

s/John Edwards Conway

_____

SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Peter Cubra, Esq.
Andrew G. Schultz, Esq.
Charles Robert Peifer, Esq.
Charles K. Purcell, Esq.
Lisa Y. Schatz-Vance, Esq.
Nancy L. Simmons, Esq.
Rachel E. Higgins, Esq.
Robert E. Hanson, Esq.
Albuquerque, NM

Counsel for State Defendants:

Jerry A. Walz, Esq.
Cedar Crest, NM

Counsel for Defendant Developmental Disabilities Planning Council and Patrick Putnam:

20

Norman F. Weiss, Esq.
Meena H. Allen, Esq.
Albuquerque, NM


Counsel for Defendant Beth Schaefer:

Elizabeth L. German, Esq.
Albuquerque, NM